IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| Central Virginia Aviation, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:14cv265–HEH |
| | ) | |
| North American Flight Services, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**
**(GRANTING MOTION TO DISMISS)**

This matter involves an alleged breach of contract and purported tortious conduct related to a contract for the sale of an airplane on eBay. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (ECF Nos. 3, 5), filed on April 21, 2014 and April 24, 2014[1] is before the Court. The matter has been fully briefed. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid the decisional process. For the reasons stated herein, the Motion to Dismiss will be granted.

**I. BACKGROUND**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), this Court draws "all reasonable inferences arising from the proof, and resolve[s] all factual disputes, in the

---

[1] Defendant filed its Motion to Dismiss twice. The Motions are identical, and this Court will address them together.

plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) .Viewed through this lens, the facts are as follows.

Central Virginia Aviation, Inc. ("Plaintiff") "is a Virginia Corporation with its principal business location in the Commonwealth of Virginia." (Compl. at ¶ 1, ECF No. 1-1.) It "is engaged in the buying, selling, and leasing of aircraft." (*Id.*) North American Flight Services, Inc. ("Defendant") "is a New York corporation with its principal business location in the State of New York." (*Id.* at ¶ 2.) It "is engaged in the business of aviation services, including the buying, selling, and leasing of aircraft." (*Id.*) Plaintiff alleges jurisdiction pursuant to Virginia's long-arm statute, Va. Code § 8.01-328.1. (*Id.* at ¶ 3.)

"On January 13, 2014, Defendant placed a Citation II airplane up for auction" on eBay. (*Id.* at ¶ 4.) "Plaintiff placed the last and highest bid for the airplane, namely $125,100 prior to the auctions [sic] close on January 18, 2014." (*Id.* at ¶ 6.) After the close of the auction, Dennis Harrup, IV ("Harrup"), President of Plaintiff Central Virginia Aviation, Inc., contacted Defendant's employee Jon Zilka ("Zilka"). (*Id.* at ¶ 7.) Harrup and Zilka arranged "for Harrup to inspect the airplane and confirm the accuracy of Defendant's representations concerning the condition and component times in the auction listing." (*Id.* at ¶ 8.) Plaintiff made a deposit toward the purchase of the aircraft in an escrow account. (*Id.* at ¶ 9.) "Due to inclement weather and Plaintiff's conflicting schedule, the contractual requirement of payment within seven days was necessarily waived by agreement of the parties." (*Id.* at ¶ 10.)

2

On February 15, 2014, Harrup traveled "to Defendant's location in New York State where the airplane is located, conducted an inspection of the airplane, . . . and met with Zilka." (*Id.* at ¶ 11.) After the inspection, "Harrup and Zilka modified the contract of sale to resolve issues concerning the condition of the aircraft." (*Id.* at ¶ 12.)

"On February 17, 2014, Plaintiff entered into a contract for the sale of the aircraft to Plaintiff's customer Richard Albert [("Albert")] for $195,000." (*Id.* at ¶ 13.) Plaintiff alleges that "[u]pon information and belief, Defendant, after learning of the contract of sale between Plaintiff and Albert . . . breached the contract with Plaintiff so as to allow the aircraft to be sold to Albert directly." (*Id.* at ¶ 14.) "On February 21, 2014, Zilka advised Plaintiff that over the past three days Defendant had received two other offers . . . and that Plaintiff had until the close of business on Wednesday, February 23, 2014 to pay [the increased price of] $170,000 for the airplane or he would sell it, 'to the next guy in line.'" (*Id.* at ¶ 15.)

Plaintiff alleges in Count I that Defendant breached its contract when it "refused to sell the subject airplane to Plaintiff except at an increased purchase price." (*Id.* at ¶ 20.) Plaintiff alleges in Count II that Defendant tortiously interfered with Plaintiff's contract with Albert when Defendant "had knowledge of this business expectancy . . . [and] intentionally . . . laid plans to deprive Plaintiff of the valuable property right that the contract with Albert represented and to thereby enrich Defendant." (*Id.* at ¶¶ 25-26.) In Count III, Plaintiff further alleges that Defendant tortiously interfered with business expectancy and/or prospective economic advantage when Defendant interfered with Plaintiff's business expectancy with Albert that "presented the probability of future

3

economic benefit to Plaintiff, not only with profit from the sale but through ongoing maintenance and service contracts." (*Id.* at ¶ 30.)

## II. STANDARD OF REVIEW

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(2) challenges the court's exercise of personal jurisdiction over a defendant. "When a court's personal jurisdiction is properly challenged . . . the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc.*, 2 F.3d at 60 (citations omitted). "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When, as here, the court is asked to decide personal jurisdiction without an evidentiary hearing, it may do so based solely on the motion papers, supporting legal memoranda and the relevant allegations of the complaint. *Mylan Labs*, 2 F.3d at 60. If the court proceeds in this fashion, "the plaintiff need prove only a *prima facie* case of personal jurisdiction," with the court drawing "all reasonable inferences arising from the proof, and resolv[ing] all factual disputes, in the plaintiff's favor." *Id.* (internal citations omitted).[2]

If Plaintiff makes the requisite showing, Defendant then bears the burden of presenting a "compelling case" that, for other reasons, the exercise of jurisdiction would

---

[2] "If a plaintiff makes a prima facie showing, this does not settle the issue, as the plaintiff must eventually prove by a preponderance of the evidence that the assertion of personal jurisdiction over the defendant is proper either at the trial or at an evidentiary hearing." *Jones v. Boto Co.*, 498 F. Supp. 2d 822, 825 n.5 (E.D. Va. 2007) (citing *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005)).

be so unfair as to violate Due Process. *Burger King v. Rudzewicz*, 471 U.S. 462, 477-78 (1985).[3] Thus, "for a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)

The Virginia Supreme Court has interpreted Virginia's long-arm statute, Va. Code § 8.01-328.1(A), to confer jurisdiction "over nonresidents who engage in some purposeful activity in Virginia, to the extent permissible under the Due Process Clause of the Constitution of the United States." *Nan Ya Plastics Corp. U.S.A. v. DeSantis*, 237 Va. 255, 259 (1989). Thus, according to the U.S. Court of Appeals for the Fourth Circuit, the statutory and constitutional inquiries merge, and the reviewing court is not required "to go through the normal two-step formula for determining the existence of personal jurisdiction." *Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 627-28 (4th Cir. 1997). While this Court need not "go through the normal two-step formula," *id.*, it will address both steps as the parties have addressed both in their briefs. *See Jones v. Boto Co.*, 498 F. Supp. 2d 822, 826 n.6 (E.D. Va. 2007).

---

[3] In the context of Due Process analysis, courts have distinguished between the exercise of general and of specific jurisdiction. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 624 (4th Cir. 1997). Here, Defendant's alleged contacts with the Commonwealth form the basis for the suit, and, thus, this Court considers whether these contacts establish specific jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 397 (4th Cir. 2003).

## III. DISCUSSION

### A. Long-Arm Statute

The Court begins its analysis by determining whether it can assume jurisdiction over Defendant, a New York corporation, under Virginia's long-arm statute. Plaintiff did not allege in its Complaint that jurisdiction falls under a particular subsection of Va. Code § 8.01-328.1(A). (Compl. at ¶ 3.) However, in its Memorandum in Opposition to Defendant's Motion to Dismiss, Plaintiff asserts that Defendant has availed itself of this Court under Subsection (A)(3)[4] in that Defendant has caused tortious injury by an act or omission in the Commonwealth when Defendant learned of Plaintiff's contract to sell the airplane to third party Richard Albert ("Albert"), and Defendant "interfered with it by refusing to sell the aircraft to Plaintiff while simultaneously attempting to sell it directly to Albert." (Mem. Opp. Def.'s Mot. to Dismiss at 2, ECF No. 9.)

Plaintiff further states that "[w]hile Defendant focuses on the breach of contract claim [for purposes of personal jurisdiction], this case is one of tort arising out of a contract." (*Id.*) Plaintiff alleges that "Defendant's breach of its contract with [Plaintiff] was integral to its plan to usurp Plaintiff's position as seller to Albert, and as such, was so related to the tort claims as to 'form part of the same case or controversy . . .' pursuant to 28 U.S. Code § 1367." (*Id.*) Thus, Plaintiff argues that "[i]f the Court finds personal jurisdiction over the tort claims, it has [supplemental] jurisdiction to adjudicate the breach of contract claim." (*Id.*)

---

[4] Va. Code § 8.01-328.1(A) states in pertinent part: "A court may exercise personal jurisdiction over a person . . . as to a cause of action arising from the person's: . . . 3. [c]ausing tortious injury *by an act or omission in this Commonwealth* . . ." (Emphasis added).

6

Analyzing Defendant's contacts with the Commonwealth under Va. Code § 8.01-328.1(A)(3), the Court must determine, as to the three claims asserted, whether Plaintiff has made a prima facie case that each arises out of Defendant's "[c]ausing tortious injury *by an act or omission in this Commonwealth.*" Va. Code § 8.01-328.1(A)(3). Plaintiff argues that "Defendant's contacts with Virginia were not random, fortuitous, or attenuated but were intentional and targeted towards Virginia, calculated to make Plaintiff's profits from the sale to Albert its own." (Mem. Opp. Def.'s Mot. to Dismiss at 2.)

This argument fails because Plaintiff must establish the tortious conduct occurred while Defendant was in Virginia. *See Jones v. Boto Co.*, 498 F. Supp. 2d 822, 826 (E.D. Va. 2007) (holding no personal jurisdiction under Va. Code § 8.01-328.1(A)(3) where plaintiff did not allege injury "occurred as a result of any act or omission" in Virginia). The same principle also applies when the tort alleged is an intentional tort. *Willis v. Clark*, 2005 U.S. Dist. LEXIS 25877, 7-8 (E.D. Va. Oct. 31, 2005) (holding that allegations of *inter alia* common law fraud and civil conspiracy do not establish personal jurisdiction under Va. Code § 8.01-328.1(A)(3) where "Plaintiff cannot establish that Defendants caused tortious injury while present in the Commonwealth of Virginia.").

There are simply no facts alleged in the Complaint, revealing that Defendant caused "tortious injury *by an act or omission in this Commonwealth.*" Va. Code § 8.01-328.1(A)(3). The Complaint does not allege a single act that Defendant has performed in Virginia. The only transaction mentioned in the Complaint is the eBay auction of the airplane. (Compl. at ¶ 5.) There is no allegation that the auction was directed at Virginia.

The auction was available to anyone with an Internet connection. The airplane that was the subject of the auction was located in New York. (*Id.* at ¶ 11.) Defendant accepted the winning bid from New York. (*Id.* at ¶ 2.) The president of Plaintiff Central Virginia Aviation, Inc. traveled to New York to inspect the plane. (*Id.* at ¶¶ 7,11.) The Complaint alleges that Albert was Plaintiff's customer, but does not allege that he was a Virginia resident. (*Id.* at ¶ 13.) Moreover, the Complaint does not allege that Defendant had direct contact with Albert. There is no specific tortious conduct alleged that ties Defendant to Virginia. Instead, the Complaint alleges that, after learning about Plaintiff's contract with Albert, Defendant "breached the contract with Plaintiff so as to allow the aircraft to be sold to Albert directly" *without reference to forum*. (*Id.* at ¶ 14.)

Thus, even when the allegations are construed in the light most favorable to Plaintiff, it is unfathomable that Defendant "[c]aus[ed] tortious injury *by an act or omission in this Commonwealth* . . ." under Va. Code § 8.01-328.1(A)(3).

### B. Due Process

Next, the Court considers whether personal jurisdiction would satisfy Due Process. Under the Due Process Clause, a court may exercise personal jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). When determining specific jurisdiction, the Fourth Circuit "consider[s] (1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State;

8

and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 712 (2002). "The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

Plaintiff notes that the U.S. Supreme Court in *Walden v. Fiore* stated "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 1123 (2014). *Walden* cites *Calder v. Jones*, 465 U. S. 783 (1984), which established the "effects test" and where the Supreme Court found sufficient contacts for jurisdiction in California when "a California actress brought a libel suit in California . . . against a reporter and editor" for the National Enquirer's headquarters in Florida. *Walden*, 134 S. Ct. at 1123 (citing *Calder*, 465 U. S. 783). The "libel claims were based on an article written and edited by defendants in Florida for publication in the National Enquirer, a national weekly newspaper with a California circulation of roughly 600,000." *Id.* The Supreme Court found sufficient contacts with California given that among other factors,

> [t]he defendants relied on phone calls to "California sources" for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California . . . ; and the "brunt" of that injury was suffered by the plaintiff in that State. . . . [Thus,] California [wa]s *the focal point both of the story and of the harm suffered.*"

9

*Id.* (emphasis added).

Plaintiff attempts to analogize the case at bar to *Calder*. This case is distinguishable because, as discussed *supra* and unlike in *Calder*, there is not a single fact alleged, showing Defendant had *any* contact with the forum state – beyond the alleged harm to Plaintiff who is based in Virginia.

Instead, this case is akin to *Walden*, where the Supreme Court found there were insufficient contacts between Defendant and the forum state when "no part of the [defendant's] course of conduct occurred in [the forum state]." *Walden*, 134 S. Ct. at 1124. Just as in *Walden*, the only action that occurred in the forum state here is the alleged injury to Plaintiff, and that is insufficient. *Id.* at 1125. This Court adopts the Supreme Court's conclusion in *Walden* that, "[Defendant's] actions in [another state] did not create sufficient contacts with [the forum state] simply because [Defendant] allegedly directed [its] conduct at [Plaintiff] whom [Defendant] knew had [forum state] connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis." *Id.* (internal citations omitted).

Consequently, the Court finds that Defendant did not have minimum contacts with Virginia as it did not "'purposefully avail' itself of the privilege of conducting activities in" Virginia. *Consulting Eng'rs Corp.*, 561 F.2d at 278; *ALS Scan, Inc.*, 293 F.3d at 712. Since Plaintiff fails to satisfy the first prong of the personal jurisdiction analysis, the Court need not reach steps two or three of the inquiry. *Consulting Eng'rs Corp.*, 561

F.2d at 278. Therefore, the Court finds that it would violate Due Process to attach personal jurisdiction.

## IV. CONCLUSION

Having found insufficient grounds for jurisdiction under Va. Code § 8.01-328.1(A)(3) and Due Process, the Court holds that Plaintiff failed to make a prima facie case that personal jurisdiction attaches. *Mylan Labs., Inc.*, 2 F.3d at 60. Accordingly, Defendant's Motion to Dismiss is granted.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: May 15, 2014
Richmond, Virginia